IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNT sledgehammertophat THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK, INC. | Case No. 21-SW-2011DPR<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Isaac McPheeters, Special Agent of the Federal Bureau of Investigation, Kansas City, Missouri, field office, the undersigned affiant, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram account that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc. ("Facebook"), an electronic communications service and/or remote computing service provider headquartered at 1601 Willow Road, Menlo Park, California 94025, in the Northern District of California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A) to require Facebook to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since January 2017. Since May 2019, I have been assigned to investigate terrorism threats and violations, to include threatening communications made through the Internet. I have gained expertise in the conduct of such investigations through training in seminars, classes, and everyday work related to conducting these types of investigations. I have attended training conducted by the FBI on the investigation of terrorism threats. Through my employment with the FBI, I have received training and experience in the application for and execution of search warrants related to online and internet communications, including those involving the use of Facebook and Instagram.

3. This affidavit is being submitted in support of a search warrant authorizing the access to and review of historical Instagram data pertaining to Instagram User **"Joshua Bippert," with the account identifier "sledgehammertophat" (the "Target Account")**. The Target Account has been identified as the Instagram account of Joshua Bippert ("Bippert"), based on subscriber returns from Facebook. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Bippert has committed online threatening communication crimes in violation of 18 U.S.C. § 875 and has utilized Instagram in the commission of these crimes. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and is not intended to include every fact or matter observed by me or known by law enforcement. The information provided is based on my personal knowledge and observation during the course of this investigation, information conveyed to me by

2

other law enforcement officials and others as set out herein, and my review of reports prepared by other law enforcement officials during the course of the investigation.

## JURISDICTION

4. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

5. On September 18, 2020, Deputy Patrick Duran of the Los Angeles County, California, Sheriff's Department ("LASD"), Lomita Station, made social media posts from the official Instagram account of the LASD – Lomita Station, username "@lasdlomita" ("Victim Account"). The posts documented the arrest of a felon in possession of a firearm. Deputy Duran made these posts while located in Los Angeles County, California. The Victim Account received numerous negative comments on Instagram in response.

6. On September 21, 2020, Deputy Duran reviewed the Victim Account and observed that, on or about September 20, 2020, the Target Account sent a private message to the Victim Account reading, "Recently a couple of your officers arrested a man for owning a firearm. If you want more of your officers to end up like the two that got shot while sitting in their patrol car then go ahead and keep the charges. Release the man who did nothing wrong but keep his second amendment rights or there will be blood. This is a threat." The post presumably referred to the September 12, 2020, ambush by a gunman on two LASD deputies sitting in their patrol car.

3

7.      On or about September 21, 2020, the Target Account made a comment on the Victim Account post referenced above, stating, "for me, the most irritating part is living in the midwest and not on the border to California where I could take a nice short drive to water the tree of liberty." I know from my training and experience that this phrase refers to a quote attributed to President Thomas Jefferson, reading in full, "the tree of liberty must be refreshed from time to time with the blood of patriots and tyrants."

8.      Deputy Duran also observed additional posts by the Target Account in which the Victim Account was tagged. These posts were made on or about September 21, 2020, reading, "Forget the constitution. We need to end gun control by any means necessary. Yes I do mean violence. @lasdlomita If you think cops are your friends you are on the wrong side. Give them a call or pay them a visit (310) 539-1661 26123 Narbonne Avenue, Lomita, CA 90717 . . . #taxationistheft #commonsense #democrat #republican #libertarian #thinblueline #anarchy #duncanlemp #danielshaver #breonnataylor #georgefloyd #ryanwhitaker #acab."

9.      Based on my training and personal knowledge, I know that the names of the hash tagged people are people who died in conflicts with law enforcement under circumstances that received widespread criticism and news coverage. I also recognize the #acab hashtag to mean "All Cops Are Bastards."

10.     Based on my review of the Target Account, it has a history of posting statements that reveal a hostility towards the United States Government.

11.     According to Deputy Duran, a since-deleted comment by the Target Account made a threat saying that deputies should check under their cars before turning them on and that LASD employee names are public information.

4

12. Deputy Duran's subsequent investigation identified an additional Instagram user, "@dezzybug," that made comments on the Target Account's posts of a romantic nature. The @dezzybug account identified the user as Destinee Bippert, whose public Facebook account indicated she was in a romantic relationship with a Joshua Bippert. Public searches for Destinee Bippert and Joshua Bippert identified the following identifiers: Joshua Lynn Bippert, date of birth 08/12/1994, Social Security number 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; and Destinee Bippert, a/k/a Destinee Crimson, date of birth 08/01/1995, Social Security number 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. Both showed an address of 148 White Drive, Branson, Missouri, a location in the Western District of Missouri.

13. As a part of my investigation, I issued a preservation request to Facebook for the Target Account on September 24, 2020, and I issued a renewal request on December 22, 2020.

14. As a part of my investigation, I requested and received Facebook subscriber records for the Instagram Target Account, which revealed the Target Account was registered on October 6, 2017, using the e-mail joshuabippert@gmail.com. An Internet Protocol ("IP") address used at the time of creation was 107.77.207.232. While record searches revealed the Internet Service Provider ("ISP") was AT&T, subscriber record returns from AT&T revealed that it was a dynamic IP address and could not be attributed to a single customer or device.

15. I also requested and received Google subscriber records for the Gmail account, joshuabippert@gmail.com, which revealed the account was created under the name "Joshua Bippert," with a recovery e-mail of joshualbippert@student.cofo.edu, a recovery phone number listed as 417-598-3719, and a sign-in phone number of 417-598-3719.

16. Record searches indicated that AT&T was the provider for the phone number 417-598-3719. I requested and received AT&T subscriber records for this phone number, which

5

revealed the financial liability party to be Destinee Crimson, 148 White Drive, Branson, Missouri, and the current user as of March 5, 2018, to be Joshua Bippert, 148 White Drive, Branson, Missouri.

## BACKGROUND CONCERNING INSTAGRAM[1]

17. Instagram is a service owned by Facebook, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website (https://ww.Instagram.com) and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the Target Account listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

18. Facebook collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Facebook keeps records of changes made to this information.

19. Facebook also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to

---

[1] The information in this section is based on information published by Facebook on its website and its Instagram website, including, but not limited to, the following webpages: "Data Policy," https://help.instagram.com/519522125107875; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

6

create and use an account, unique identifiers, and other information about devices and web browsers used to access an account, and session times and durations.

20. Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

21. Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Facebook maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Facebook and third-party websites and mobile apps.

22. Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

7

23. Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Facebook to access the contact lists on their devices to identify which contacts are Instagram users. Facebook retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Facebook to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

24. Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

25. One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Facebook's servers.

26. Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

8

27. An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Facebook's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

28. Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

29. Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders cannot view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

30. Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

31. Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Facebook retains records of a user's search history and followed hashtags.

32. Facebook collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Facebook to personalize and target advertisements.

33. Facebook uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Facebook maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

34. In some cases, Instagram users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

35. For each Instagram user, Facebook collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, full names, privacy settings, e-mail addresses, and profile bios and links).

36. In my training and experience, evidence of who was using the Instagram Target Account at the time the above-described posts were made and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

37. For example, stored location information associated with the Target Account is relevant to the location of the person who made the above Instagram posts and, as such, is direct evidence of the offenses under investigation.

38. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Facebook can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, e-mail and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.

11

Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

39. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

40. Therefore, Facebook's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

41. Based on the forgoing, I request that the Court issue the proposed search warrant.

42. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Facebook. Because the warrant will be served on Facebook, who will then

compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

*[signature]*

Isaac McPheeters
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me by telephone or other electronic means on the __20th__ day of January 2021.

*[signature]*

David P. Rush
Chief United States Magistrate Judge
Western District of Missouri